OPINION OF THE COURT
John R. LaCava, J.
This is an action in which the plaintiff seeks damages incurred for the removal and rebuilding of an engine and certain other mechanical defects in a used car which was purchased from the defendant.
*470 After a trial held on October 5, 1987, the court makes the following findings of fact and conclusions of law:
On July 13, 1987, the plaintiff’s son, Lawrence Dómeles, purchased a used 1972 Buick GSX from the defendant. Mr. Dómeles had seen an ad which contained a picture of the vehicle and which read as follows: "Buick 1972 GSX, not an original, as close as you can get, all new body parts, 5,000 miles on a new rebuilt 455 Stage 1, car show winner, new exhaust system, mint, tires, never seen rain or snow, garage kept, needs minor interior work, 12 bolt posi rear, hood, tachometer, rear spoiler, all replica details, must sell, $4,500.00.”
Mr. Dómeles answered the ad and spoke with Mr. Carpenito who reiterated the items in the ad and specifically assured that the rebuilt engine had less than 5,000 miles and that the car had been "babied” among other things. Mr. Dómeles neither test drove the vehicle nor did he have a mechanic inspect the vehicle prior to purchasing it. No written warranty was given by the seller.
Mr. Dómeles paid $4,000 to the defendant and drove the car from the defendant’s home in Port Chester to his home in Pelham. The plaintiff claims to have left the car at home until July 17th when he registered it and was going to drive the car to Valhalla to have a mechanic inspect the car. July 17th was a hot summer day and on the way to Valhalla, some 15 miles from Pelham, the car began to overheat. The car’s engine apparently seized because of the extreme heat and had to be towed back to Pelham. The engine was removed from the Buick at a cost of $450 and another new rebuilt engine was installed at a cost of $1,152. Additional work has to be done on the car including repairing broken rear suspension springs ($600), installing a new transmission ($750), and replacing a corroded chain cover ($174.25).
The plaintiff feels that he was given the assurance that the car had a new rebuilt engine with only 5,000 miles on it and that the car should not have seized up and died after being driven only a few miles. The plaintiff relied on defendant’s assurances and expected the assurances to be true. The plaintiff also argues that the parts could not have been checked out unless the entire motor had been removed and thus were not readily discernible.
The defendant testified that he had the car for three years and only registered and used it during the summer months. *471 There were no problems with the car since the rebuilt engine was installed. When the plaintiff bought the car, the defendant urged him to have it checked out. The car was in perfect driving condition when the plaintiff picked it up. The defendant stated that he is a private owner and knows of no obligation to give any type of warranty. If you take the car, you’re taking the risk that something might go wrong.
Statutory or codified law protects the purchaser of a vehicle if the vehicle is bought from a dealer who is in the business of selling cars. Under section 198 (b) of the General Business Law (the Lemon Law), any person purchasing a used car for more than $1,500 from anyone selling three or more used cars per year must be given a written warranty. The Uniform Commercial Code sets forth certain implied warranties of merchantability and fitness which are designed to protect consumers in the absence of any express or written warranty. The Uniform Code, however, requires that the seller be a merchant with respect to goods of that kind or the manufacturer of the product (see, 47 NY Jur, Products Liability, §§ 75, 78, at 210, 212).
An exhaustive search of published case law in New York has revealed only one decision in which the seller of a private vehicle was held to be liable for a defective vehicle. In that case, the evidence established that at the time of the sale the vehicle’s cylinder head was cracked in five places. In Ezikian v Capurro (111 Misc 2d 372), Justice Shapiro wrote: "Because defendant was not a dealer, or shown to be a mechanic, the court cannot construe either an implied warranty of merchantability under section 2-314 of the Uniform Commercial Code or an implied warranty of fitness for a particular purpose under section 2-315 of the Uniform Commercial Code. However, the court construes seller’s assurances that 'the engine runs good’ as a representation that the engine was 'not cracked’ .” The court reasoned that "seller’s oral representation was also an express warranty under section 2-313 of the Uniform Commercial Code, at least to the extent that the engine was 'not cracked’.” (Supra, at 373.)
While the Ezikian case (supra) gives this court the power to find liability on the part of a private seller where an express representation has been made that a car is roadworthy, there the similarity ends. The decision in Ezikian is premised on the fact that there was a known and ascertainable critical defect in the engine, e.g., that the engine block was cracked in five places. In the instant case, there is a total absence of proof as *472 to what caused the engine to seize up. The plaintiff who has the responsibility of proving his case, presented no expert testimony or any proof as to the cause of the malfunction. What the court knows is that the plaintiff bought a 15-year-old automobile with a rebuilt engine which had at least 5,000 miles on it. The plaintiff may have contributed to the overheating of the engine by driving the car after the overheating condition had developed or by abusing the high-performance engine in a tryout. An engine simply does not overheat and have its pistons, etc., seize up instantaneously. Tremendous heat has to build up within the engine in order to cause the metal to melt and fuse with the cylinder wall. It is not clear whether the plaintiff failed to perceive the warning signs of the overheating and pull the car over to cool down.
With regard to the ad which was published by the defendant the court would note that all that was indicated was that the automobile had a rebuilt engine with 5,000 miles. It is interesting to note that the bill submitted by the plaintiff regarding the rebuilt engine which was installed on October 2, 1987 contains no warranties of any kind as to the performance and durability of the engine. Does plaintiff require defendant to be held to a higher standard on a rebuilt engine with 5,000 miles than he has attempted to hold his own mechanic to on a brand new rebuilt engine?
The other claims in this case (broken transmission, defective springs, and corroded chain cover) appear to be items which would be readily ascertainable upon a proper mechanical inspection. Had plaintiff arranged to have a mechanic view and test the car prior to purchase, the latter items could have or should have been discoverable. Failure to have the car inspected acted as a waiver with respect to the latter claims.
In short, the law in New York with regard to car purchases between private citizens is generally "caveat emptor” (let the buyer beware). The Legislature has not passed any laws protecting the rights of purchasers in private transactions. Where the seller has attested to the roadworthiness of the automobile, at least one court has interpreted such a statement to be an express warranty under the Uniform Commercial Code. In order to sustain a claim under the Ezikian case (supra), there must be proof of an actual defect in the automobile which was material and which existed when the automobile was sold. The plaintiff has failed to prove such a specific defect in this case with regard to the rebuilt motor. Any claims as to the transmission, springs and chain guard were *473 discoverable upon a proper mechanical inspection and were waived when the plaintiff did not avail himself of such an inspection and in effect took the car "as is”.
Based upon the above, judgment is entered for the defendant dismissing the complaint.